UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KITCHEN,

                Plaintiff,

v.

O'BELL T. WINN, WILLIAM FOY,
NANNIE CULBERSON, THOMAS HAYNES,
KETURAH MORRIS, MARK CHALKER,
BRADLEY ODETTE, BOBBY KARL,
TONY GLYNN, BRIAN TROMBLEY, and
UNKNOWN SUPERVISORS OR GUARDS,

                Defendants.
_____/

Case No. 2:17-cv-11627
Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' SEPTEMBER 6, 2017 MOTION FOR SUMMARY JUDGMENT (DE 25)

**I.    RECOMMENDATION**: The Court should grant in part and deny in part Defendants' September 6, 2017 motion for summary judgment (DE 25), as detailed below.

**II.   REPORT**

    **A.    Background**

Michael Kitchen (#189265), is currently in the MDOC's custody at Carson City Correctional Facility (DRF). (DE 29.) On May 19, 2017, while incarcerated at the Earnest C. Brooks Correctional Facility (LRF), Kitchen filed the instant

1

lawsuit *in pro per* against ten named defendants, each of whom is identified as being located at the Saginaw Correctional Facility (SRF).  (DE 1 ¶¶ 5-7.)  In addition, he lists as Defendants "Unknown Supervisors or Guards."  (DE 1 ¶ 8.)  Each of the 10 named defendants is represented by Michigan's Attorney General.  (DE 11; *see also* DEs 13-22.)[1]  Defendants were given until September 27, 2017 by which to file a responsive pleading.  (DEs 23, 24.)

### B. Instant Matter

Judge Steeh has referred this case to me for all pretrial proceedings.  (DE 7.)  Currently before the Court are Defendants' September 6, 2017 motion for summary judgment (DE 25) and motion for protective order (DE 26), regarding which Plaintiff has filed a response (DE 27) and an amendment to the response (DE 28).

### C. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Plaintiff is proceeding *in forma pauperis*. (DEs 2, 4; *see also* DEs 8, 9.)  On June 26, 2017, Plaintiff filed a motion, which, in sum, sought a court order requiring the MDOC "to properly interpret its order concerning the federal filing fee and to refund $60.00 to Plaintiff's prison account . . . ." (DE 6 at 1.)  I denied this motion without prejudice, and Plaintiff has filed objections.  (DEs 10, 12.)  Meanwhile, the Court has been informed that Plaintiff's $350.00 filing fee has been paid in full, apparently via several payments during June through October 2017.  (DE 30 at 5.)

56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### D. Discussion

#### 1. Claims

Plaintiff was transferred to SRF on October 7, 2016. (DE 1 ¶ 9.) He dedicates several paragraphs of his complaint to describing SRF's security levels and housing units. (DE 1 ¶¶ 11-20.) According to Plaintiff, for safety reasons, he was placed in SRF's Unit 1200, which he describes as "a housing unit in the SRF Level IV 'Close Security' Division in the general prison population." (DE 1 ¶ 10.)

Plaintiff's "Statement of Claims" consists of three counts. In Count I, which is labeled, "retaliation," Plaintiff alleges that Defendants Morris, Winn, Foy, Culberson, Haynes, and Chalker's participation in Plaintiff's December 22, 2016 transfer to Unit 600's Sanction Wing was "because of" Plaintiff's December 21,

2016 complaint against Morris and resulted in deprivations and increased restrictions. (DE 1 ¶¶ 71-76; *see also* DE 1 ¶¶ 21-34.) Plaintiff initiated grievance Nos. SRF-16-12-1948-28B and SRF-16-12-1949-28B based upon the events of December 22, 2016. (DE 25 at 95-100; *see also* DE 1 ¶¶ 35-38.)

In Count II, Plaintiff alleges "retaliation, cruel & unusual punishment, & substantive due process violation" against Defendants Karl, Odette, Trombley, Glynn, Haynes, and "Unknown Supervisors and/or Guards" in association with a December 26-27, 2017 strip search, vandalization of personal property, and/or transfer to Unit 500's "Sanction Wing." (DE 1 ¶¶ 77-83; *see also* DE 1 ¶¶ 39-48, 50-53, 55-59.) Plaintiff initiated SRF-16-12-1954-17B based on the events of December 26, 2017 (DE 25 at 81-85), SRF-2016-12-1962-28B based on the events of December 27, 2016 (DE 25 at 92-94), and SRF-17-01-0097-28B based on body cavity and jail cell searches which occurred on January 17, 2017 (DE 25 at 89-91). (*See also* DE 1 ¶¶ 49, 54-57, 60.)[2]

In Count III, Plaintiff alleges intentional infliction of emotional distress claims against all Defendants. (DE 1 ¶¶ 84-87.)

---

[2] Plaintiff's complaint contains other general allegations; however, these appear to be limited to: **(a)** an alleged January 23, 2017 search conducted by non-party Officer Huizar (DE 1 ¶¶ 61-65), regarding which Plaintiff initiated SRF-17-01-0124-17G (DE 25 at 68-72, DE 1 ¶ 66); and, **(b)** an alleged February 1, 2017 vandalization of Plaintiff's personal property by non-parties – Officers Barney and Rozier (DE 1 ¶¶ 67-70), regarding which Plaintiff initiated SRF-17-02-0165-17g (DE 25 at 76-80). To the extent these allegations relate to "unknown supervisors and guards," such defendants are not properly before this Court.

## 2. Plaintiff pursued 11 SRF grievances through Step III.

"Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") ¶ B (effective July 9, 2007). From 2010 through May 2017, Plaintiff initiated myriad MDOC grievances that were pursued through Step III. (DE 25 at 35-62.)

Eleven (11) of these grievances were filed at SRF: **(1)** SRF-16-10-1666-12G; **(2)** SRF-16-12-1948-28B; **(3)** SRF-16-12-1949-28B; **(4)** SRF-16-12-1954-17B; **(5)** SRF-16-12-1962-28B; **(6)** SRF-17-01-0097-28B; **(7)** SRF-17-01-0124-17G; **(8)** SRF-17-02-0165-17g; **(9)** SRF-17-02-0176-28B; **(10)** SRF-17-02-0198-28B; and, **(11)** SRF-2017-02-0222-22F. (DE 25 at 35-38; *see also* DE 25 at 9-11.) Of these, **SRF-1666** grieves an optometrist based on the events of October 22, 2016 (DE 25 at 104); **SRF-0124** grieves a non-party and "unknown supervisors and/or other employees, guards[,]" (DE 25 at 71); **SRF-0165** grieves non-parties Barney and Rozier, as well as "unknown supervisors, guards, or employees" regarding the February 1, 2017 search (DE 25 at 79); **SRF-0176** grieves Warden Winn and several non-parties "as a prelude to a civil rights action . . . [,]" regarding

6

misconduct charges filed against Plaintiff (DE 25 at 88);[3] **SRF-0198** grieves non-parties Vittitow and Miller concerning false misconduct charges (DE 25 at 75); and, **SRF-0222** grieves Warden Winn, RUM Culberson, Deputy Foy and Deputy Zummer regarding "out-of-cell time[,]" (DE 25 at 66).

In other words, it seems that 6 of the SRF grievances do not concern the named defendants at issue in the instant motion *and* the events underlying Plaintiff's complaint. As such, this report considers whether the other 5 SRF grievances operate to exhaust any of Plaintiff's claims against the named defendants.

### 3. Exhaustion

#### a. SRF-16-12-1948-28B / SRF-16-12-1949-28B[4]

---

[3] Plaintiff has also filed *Kitchen v. Heyns, et al.*, Case No. 2:14-cv-12883-VAR-DRG (E.D. Mich.) (in which a motion for summary judgment is pending) and *Kitchen v. Snyder, et al.*, Case No. 2:16-cv-10378-LJM-PTM (E.D. Mich.) (transferred to the W.D. Mich. on Feb. 22, 2016). Based on the timing of SRF-0176 (initiated in February 2017), Plaintiff must not be referring to one of these cases.

[4] SRF-1949 – apparently initiated on the heels of SRF-1948 – grieves Defendants Morris, Culberson, Foy, Winn, Chalker and Haynes regarding the December 22, 2016 transfer from a Unit 1200 general population cell to a "Sanction/Transition Wing" in Unit 600 "to create bed space for a white prison[,]" which Plaintiff claims was "racially discriminative" and violated MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"). (DE 25 at 100.) Although it grieves named Defendants and concerns the time period at issue in this case, the alleged "racial motivation" for the transfer is not really at the heart of this case. (*See*, *e.g.*, DE 1 ¶ 37; *see also* DE 25 at 98-99.)

7

SRF-1948 grieves Defendants Morris, Foy, Winn, Culberson, Haynes and Chalker regarding Plaintiff's December 22, 2016 transfer from a Unit 1200 general population cell to "a more restrictive form of confinement in Unit 600 on the Sanction/Transition Wing," in retaliation for Plaintiff's December 21, 2016 complaint against Defendant Morris. (DE 25 at 97.) The subject matter of this grievance forms the basis for several paragraphs of Plaintiff's complaint (DE 1 ¶¶ 21-34) and appears to be related at least to Count I (DE 1 ¶¶ 71-76).

The Step II response to this grievance is dated January 30, 2017. (DE 25 at 96.) Plaintiff's Step III appeal was received on January 19, 2017, and the Step III response is dated May 26, 2017 (DE 25 at 37, 95); in other words, seven (7) days *after* the filing of the instant lawsuit. This raises the question of whether Plaintiff's May 19, 2017 complaint was premature. (DE 25 at 18.) *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.") As the relevant provision of the MDOC's PD 03.02.130 provides,

> Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant. The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. An extension for a Step I or II response shall not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division. The Grievance Coordinator shall immediately notify the grievant in writing whenever

> an extension has been approved; the extension also shall be noted in the grievance response.

MDOC PD 03.02.130 ¶ S. Working from December 27, 2016, the date on which Plaintiff's Step I grievance was received, and there appearing to be no evidence that an extension was granted, a Step III response should have been provided by April 26, 2017. (DE 25 at 37, 95-100.) The parties acknowledge as much. (*See* DE 25 at 18, DE 27 at 5-6, DE 28 at 2-3.) Therefore, "the grievance process was completed before Plaintiff filed suit on [May 19, 2017], even though the Step III responses were not provided to Plaintiff until a later date." *Gardner v. Michigan Dep't of Corr.*, No. 2:16-CV-2, 2017 WL 762405, at *2 (W.D. Mich. Feb. 28, 2017).

Instead, Defendants seem to hang their hats on the fact that SRF-1948 was "deemed vague and rejected at step I[,]" the rejection was upheld at Step II, and the Step III appeal was denied. (DE 25 at 18, 95-97.) Stated otherwise, this grievance appears to have been rejected as running afoul of MDOC PD 03.02.130 ¶ G(1) ("It is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant."). Thus, Defendants claim, SRF-1948 was not *properly* grieved or exhausted. (DE 25 at 18-19.)

"[P]roper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses

9

the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo,* 286 F.3d, at 1024 (emphasis in original)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In pertinent part, the policy directive provides, "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ R. *See*, *e.g.*, *Moore v. Warren*, No. 13-CV-11831-DT, 2015 WL 753204, at *5 (E.D. Mich. Feb. 22, 2015) (Cleland, J., adopting report and recommendation of Grand, M.J.) ("Because Moore's grievance provides no detail whatsoever as to why or how she believed DeAngelo violated her rights, it fails to satisfy the Policy's exhaustion requirements.").

In addition, it is clear that MDOC PD 03.02.130 provides examples of "non-grievable issues," and reasons for which a grievance may be rejected. *Id*. ¶¶ F, G. *See, e.g., Vandiver v. Corr. Med. Servs., Inc.*, 326 F.App'x 885, 891 n.3 (6th Cir.

2009) ("The district court did not err in finding that the grievance did not properly exhaust the claims regarding the denial of treatment or a diabetic diet because the grievance was vague and raised multiple unrelated issues."); *Perry v. Cousins*, No. 15-13930, 2016 WL 4720420, at *2 (E.D. Mich. Sept. 9, 2016) (Cohn, J.) ("although plaintiff appealed all the way to Step III, the fact that the grievance was initially rejected for failing to comply with a policy directive supports a finding that he failed to properly exhaust his administrative remedies.").

However, as Plaintiff points out, the Court may disagree with "the reasons given by prison officials in rejecting grievances." (DE 27 at 7.)  *See Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012) (Michelson, M.J.) ("the Court is not required to blindly accept the state's application of the procedural rule."), *report and recommendation adopted in part, rejected in part*, No. 11-11830, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012) (Battani, J.) (rejected on other grounds); *Griffin v. Berghuis*, No. 11-14876, 2016 WL 1165826, at *8 (E.D. Mich. Jan. 3, 2016) (Hluchaniuk, M.J.) (citing *Reeves*), *report and recommendation adopted*, No. 11-14876, 2016 WL 1161503 (E.D. Mich. Mar. 24, 2016) (O'Meara, J.).

Here, it is relatively clear to this Court that SRF-1948 was initiated to grieve Defendants Morris, Foy, Winn, Culberson, Haynes and Chalker regarding Plaintiff's December 22, 2016 transfer from a Unit 1200 general population cell to

"a more restrictive form of confinement in Unit 600 on the Sanction/Transition Wing," which was allegedly in retaliation for Plaintiff's December 21, 2016 complaint against Defendant Morris. (DE 25 at 97.)[5] Plaintiff having identified the complaint against Morris by its date, the Court can reasonably disagree with the MDOC's response that Plaintiff did not provide information "to corroborate [his] general allegation of being moved to a different housing for retaliatory purposes." Moreover, having been appealed through Step III, the Court should conclude that SRF-1948 properly exhausts claims within his complaint regarding the matters of which this grievance complains.

### b. SRF-16-12-1954-17B

SRF-1954 grieves Defendants Karl, Odette and "unknown supervisors or guards" regarding the December 26, 2016 search of his person and cell, allegedly in retaliation for complaint from him and his family regarding his placement in Unit 600. (DE 25 at 84.) The subject matter of this grievance forms the basis of several paragraphs of Plaintiff's complaint (DE 1 ¶¶ 39-49) and appears to be related at least to Count II (DE ¶¶ 77-83).

---

[5] The Court observes that Defendants have failed to comply with Local Rule ECF Appendix R18(b) as to the electronic filing of exhibits, instead simply filing one massive document with all exhibits attached, which is difficult to navigate. The Attorney General should know better, and is directed to follow the proper procedure in the future.

The MDOC's Step III grievance response was dated May 10, 2017. (DE 25 at 36, 81-82.) The instant lawsuit was filed nine days later, on May 19, 2017. (DE 1.) In fact, Defendants seem to agree that SRF-1954 properly exhausts Plaintiff's claims against Karl and Odette (*see* DE 25 at 18), which would be consistent with their assertion that only eight of the defendants – Morris, Culberson, Foy, Winn, Chalker, Haynes, Trombley, and Glynn – should be dismissed from this case (DE 25 at 20). (*See also* DE 27 at 10, DE 28 at 3.)

### c. SRF-16-12-1962-28B

SRF-1962 grieves Defendants Haynes and "currently unknown supervisors guards" regarding his December 27, 2016 transfer from Unit 600 to Unit 500, which Plaintiff suggests was in retaliation for his December 26, 2016 complaints. (DE 25 at 94.) The subject matter of this grievance forms the basis for several paragraphs of Plaintiff's complaint (DE 1 ¶¶ 49-54) and appears to be related at least to Count II (DE 1 ¶¶ 80-81).

Plaintiff's Step I grievance was "deemed vague and rejected at step I[,]" explaining that Plaintiff had "not provided the appropriate information pursuant to paragraph (R)" of MDOC PD 03.02.130 such that the respondent could "determine if [Plaintiff had] a grievable issue." (DE 25 at 94.) The rejection was upheld at Step II. (DE 25 at 93.) The Step III grievance response, which also upheld the

13

rejection, is dated February 28, 2017. (DE 25 at 37, 92.) The instant lawsuit was filed nearly three (3) months later, on May 19, 2017.

As they did with SRF-1948, Defendants contend that SRF-1962 was not *properly* grieved or exhausted. (DE 25 at 18-19). Moreover, in defense of their averment that many of Plaintiff's grievances were "entirely conclusory and lacking in adequate detail[,]" Defendants assert that SRF-1962 "alleges that the transfer was in retaliation for him complaining about that transfer (which he claimed was retaliatory)." (DE 25 at 20.)

Neither Plaintiff's response nor his amended response seems to mention SRF-1962. Nonetheless, it is relatively clear to this Court that SRF-1962 was initiated to grieve Defendants Haynes and "unknown supervisors & guards" regarding Plaintiff's December 27, 2016 transfer from "Unit 600's Sanction/Transition Wing" to "Unit 500's Sanction/Transition Wing," and that such transfer was alleged to have been "retaliatory," as it "occurred one day after [Plaintiff] filed complaints against Unit 600's staff and other staff members . . . ." (DE 25 at 94.) In other words, he was grieving that his December 27, 2016 transfer was in retaliation for his December 26, 2016 complaints. Moreover, SRF-1962 describes the subject matter of these complaints, which bear some resemblance to the issues mentioned in SRF-1949 (dated December 23, 2016 based upon a December 22, 2016 incident) and SRF-1954 (dated December 26, 2016

14

based upon an incident of the same date). (*Compare* DE 25 at 94 *with* DE 25 at 100, 84.) As such, the Court can reasonably disagree with the MDOC's response that this grievance does not comply with MDOC PD 03.02.130 ¶ R - which seeks, for example, "who, what, when, where, why, how[,]" and requires "[d]ates, times, places, and names of all those involved in the issue being grieved . . .[,]" – or that it is "vague." *Reeves*, 2012 WL 3206399, at *5; *Griffin*, 2016 WL 1165826, at *8. Moreover, having been appealed through Step III, the Court should conclude that SRF-1962 properly exhausts claims within his complaint regarding the matters of which this grievance complains.

### d. SRF-17-01-0097-28B

SRF-0097 grieves Defendants Trombley, Glynn and "Unknown MDOC Supervisors, Officers, or Employees" regarding a January 17, 2017 strip search and cell/bed search, which Plaintiff alleges were in retaliation for, *inter alia*, his complaints about being placed in Units 500 and 600's sanction wings. (DE 25 at 91.) The subject matter of this grievance forms the basis for several paragraphs of Plaintiff's complaint (DE 1 ¶¶ 55-59) and appears related to at least Count II (DE 1 ¶ 79).

Plaintiff's Step I grievance was "deemed vague and rejected at step I[,]" explaining that Plaintiff "ha[d] not provided the appropriate information pursuant to paragraph (R)" of MDOC PD 03.02.130, such that the respondent could

"determine if [Plaintiff had] a grievable issue." (DE 25 at 91.) The rejection was upheld at Step II. (DE 25 at 90.) The Step III grievance response, which also upheld the rejection, is dated March 28, 2017. (DE 25 at 89.) The instant lawsuit was filed nearly two (2) months later, on May 19, 2017. (DE 1; *see also* DE 28 at 3.)

As they did with SRF-1948 and SRF-1962, Defendants contend that SRF-0097 was not *properly* grieved or exhausted. (DE 25 at 18-19). Plaintiff responds that SRF-0097 is "specific in detail by naming the appropriate officials, the date on which the incident arose, and clearly sets forth the allegations against the guards." (DE 27 at 10.) I agree.

It is relatively clear to this Court that SRF-0097 was initiated to grieve Defendants Trombley, Glynn and "Unknown MDOC Supervisors, Officers, or Employees" regarding the January 17, 2017 strip and cell/bed searches and that such searches were allegedly "in retaliation [for his] complaints" about "being placed on Unit 500's and 600's Sanction Wings," and "a strip search that [he] was subjected to in Unit 600 . . . ." (DE 25 at 91.) In fact, SRF-0097 goes so far as to direct the MDOC's attention to several grievance identifiers, including SRF-1948 (which grieved the December 22, 2016 transfer to Unit 600 (DE 25 at 97)) and SRF-1954 (which grieved the December 26, 2016 strip search (DE 25 at 84)). As such, the Court can reasonably disagree with the MDOC's response that this

grievance does not comply with MDOC PD 03.02.130 ¶ R or that it is "vague." *Reeves*, 2012 WL 3206399, at *5; *Griffin*, 2016 WL 1165826, at *8. Moreover, having been appealed through Step III, the Court should conclude that SRF-0097 properly exhausts claims within his complaint regarding the matters of which this grievance complains.

### 4. The Eleventh Amendment bars Plaintiff's official capacity claims.

Plaintiff sues each of the defendants in his or her individual and official capacities, and he seeks monetary damages. (DE 1 ¶¶ 5-8, 76, 83, 87.) Defendants argue that the official-capacity claims against them should be dismissed. (DE 25 at 20-21.) The Court should agree. Where a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Plaintiff's claims against defendants in their official capacities, therefore, are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Put another way, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Id.* at 169 (internal citation omitted). Thus, even if the Court agrees that some or all of Plaintiff's claims against the named defendants have been properly exhausted, the Eleventh

Amendment remains a bar to Plaintiff's claims for money damages against defendants in their official capacities.

### E. Conclusion

In sum, the Court should deny Defendants' September 6, 2017 motion for summary judgment (DE 25) to the extent it seeks dismissal on the basis of failure to exhaust; however, it should grant the motion to the extent it seeks dismissal of Plaintiff's claims for money damages against defendants in their official capacities.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 20, 2018  s/Anthony P. Patti  
Anthony P. Patti  
UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on April 20, 2018, electronically and/or by U.S. Mail.

s/Michael Williams  
Case Manager for the  
Honorable Anthony P. Patti