UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KITCHEN,

                                          Case No. 2:17-cv-11627

            Plaintiff,           Judge George Caram Steeh

v.                               Magistrate Judge Anthony P. Patti

O'BELL T. WINN, WILLIAM FOY,
NANNIE CULBERSON, THOMAS HAYNES,
KETURAH MORRIS, MARK CHALKER,
BRADLEY ODETTE, BOBBY KARL,
TONY GLYNN, BRIAN TROMBLEY, and
UNKNOWN SUPERVISORS OR GUARDS,

                  Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART and DENYING IN PART PLAINTIFF'S JANUARY 25, 2019 MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT AND TO APPOINT U.S. MARSHALS TO SERVE NEW DEFENDANTS (DE 45)

I.    **OPINION**

    A.    **Background**

Michael Kitchen (#189265), is currently in the Michigan Department of Corrections' (MDOC's) custody at Michigan Reformatory (RMI). (DE 43.) On May 19, 2017, while incarcerated at the Earnest C. Brooks Correctional Facility (LRF), Kitchen filed the instant lawsuit *in pro per* against ten named defendants, each of whom is identified as being located at the Saginaw Correctional Facility

(SRF). (DE 1 ¶¶ 5-7.) In addition, he lists as Defendants "Unknown Supervisors or Guards." (DE 1 ¶ 8.)

Each of the ten named defendants is represented by Michigan's Attorney General. Defendants were given until September 27, 2017 by which to file a responsive pleading. (DEs 23, 24.) On May 22, 2018, Judge Steeh entered an order accepting my report and recommendation, granting in part and denying in part Defendants' motion for summary judgment, and dismissing Plaintiff's claims for money damages against Defendants in their official capacities. (DE 33.)

### B. Discovery Motion Practice & Deadline Extensions

On July 12, 2018, Plaintiff filed a motion to compel discovery and to enforce a subpoena. (DE 35.) Approximately two months later, the Court granted the motion as unopposed. (DE 36.) Shortly thereafter, I entered an order setting the discovery deadline for November 6, 2018 and the dispositive motion cutoff for December 6, 2018. (DE 37.)

On November 6, 2018, Plaintiff filed another motion to compel discovery, which also sought other forms of relief. (DE 38.) On December 4, 2019, I entered an order providing that discovery was to be completed by Monday, January 7, 2019, and dispositive motions were to be filed no later than Wednesday, February 6, 2019. Thereafter, on January 18, 2019, the Court granted in part and denied in part Plaintiff's second motion to compel discovery, extended the discovery deadline to

February 4, 2019, and denied as unnecessary Plaintiff's motion to permit motion for sanctions. (DE 44 at 17-18.) Plaintiff's objections regarding the order were overruled. (DEs 46, 50.)

In sum, the discovery deadline has twice been extended, and the discovery period has concluded. On February 25, 2019, Defendants filed a motion to amend the December 4, 2018 case management scheduling order. (DE 48.) On February 27, 2019, I granted the motion to the extent it sought an extension of the March 6, 2019 dispositive motion deadline and extended the deadline for filing dispositive motions to June 5, 2019.

### C.    Pending Matters

Judge Steeh has referred this case to me for all pretrial proceedings. Currently before the Court are:

**(a)**    Plaintiff's January 25, 2019 motion for leave of court to amend complaint and to appoint U.S. Marshals to serve new Defendants (DE 45), regarding which a response and a reply have been filed (DEs 47, 49);

**(b)**    Plaintiff's March 11, 2019 third motion to compel discovery and to impose sanctions against Defendant Odette (DE 51), regarding which Defendants have filed a response (DE 54);

**(c)**    Plaintiff's March 13, 2019 motion for summary judgment against all Defendants (DE 52); and,

**(d)**    Defendants' March 18, 2019 motion for enlargement of time to file a response to the Plaintiff's motion for summary judgment (DE 53).

The Court will now address Plaintiff's motion to amend his complaint, and the remaining matters will be addressed under separate cover in the future.

### D. Fed. R. Civ. P. 15 ("Amended and Supplemental Pleadings")

Plaintiff brings his motion to amend pursuant to Fed. R. Civ. P. 15(a). This rule permits amending a pleading once as a matter of course within "**(A)** 21 days after serving it, or **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as *undue delay, bad faith or dilatory motive* on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphases added).

### E. Comparison of Plaintiff's Operative and Proposed Amended Pleadings

#### 1. Plaintiff's original complaint named 10 Defendants and "Unknown Supervisors or Guards."

Plaintiff was transferred to SRF on October 7, 2016. (DE 1 ¶ 9.) He dedicates several paragraphs of his complaint to describing SRF's security levels and housing units. (DE 1 ¶¶ 11-20.) According to Plaintiff, for safety reasons, he was placed in SRF's Unit 1200, which he describes as "a housing unit in the SRF Level IV 'Close Security' Division in the general prison population." (DE 1 ¶ 10.)

Plaintiff's "Statement of Claims" consists of three counts. In Count I, which is labeled, "Retaliation," Plaintiff alleges that Defendants Morris, Winn, Foy, Culberson, Haynes, and Chalker's participation in Plaintiff's December 22, 2016 transfer to Unit 600's Sanction Wing was "because of" Plaintiff's December 21, 2016 complaint against Morris and resulted in deprivations and increased restrictions. (DE 1 ¶¶ 71-76; *see also* DE 1 ¶¶ 21-34.) Plaintiff initiated grievance Nos. SRF-16-12-1948-28B and SRF-16-12-1949-28B, each of which concerned Plaintiff's December 22, 2016 transfer to a sanction/transition wing. (DE 25 at 95-100; *see also* DE 1 ¶¶ 35-38.)

In Count II, labeled "Retaliation, Cruel & Unusual Punishment, & Substantive Due Process Violation" Plaintiff mentions Defendants Karl, Odette, Trombley, Glynn, Haynes, and "Unknown Supervisors and/or Guards," in association with an

alleged December 26-27, 2017 strip search, vandalization of personal property, and/or transfer to Unit 500's "Sanction Wing." (DE 1 ¶¶ 77-83; *see also* DE 1 ¶¶ 39-48, 50-53, 55-59.) Plaintiff initiated SRF-16-12-1954-17B based on the events of December 26, 2017 (DE 25 at 81-85), SRF-2016-12-1962-28B based on the events of December 27, 2016 (DE 25 at 92-94), and SRF-17-01-0097-28B based on the events of January 17, 2017 (DE 25 at 89-91). (*See also* DE 1 ¶¶ 49, 54, 60.)

In Count III, Plaintiff alleges intentional infliction of emotional distress claims against all Defendants. (DE 1 ¶¶ 84-87.)

### 2. Plaintiff's proposed amended pleading names 18 Defendants.

In addition to the existing 10 named Defendants, Plaintiff's proposed amended complaint names eight more Defendants: **(1)** Todd Massick; **(2)** Markus Huizar; **(3)** Jermer Rozier; **(4)** Russell Vittitow; **(5)** Captain Close; **(6)** Sgt. Biddle; **(7)** Sgt. Wendt; and, **(8)** Sgt. M. Smith. (*Compare* DE 1 ¶¶ 5-8, DE 45-1 ¶¶ 5-8.)[1]

Beyond the addition of named Defendants, the original and proposed amended pleadings bear large similarities. For one thing, <u>the original and proposed general</u>

---

[1] Incidentally, the caption of Plaintiff's proposed, verified amended pleading does not comport with the requirement that "[t]he title of the complaint must name all the parties[.]" Fed. R. Civ. P. 10(a). The caption simply lists Defendants as "O'Bell T. Winn, et al." (DE 45-1 at 1.) To complicate matters, while proposed Defendant Bobby Karl is listed in the opening paragraph of the proposed pleading, he does not seem to be listed in the paragraphs identifying the parties, although this may be explained by what appears to be Plaintiff mistakenly twice listing Defendant Mark Chalker. (*Compare* DE 45-1 at 1, DE 45-1 at 2 ¶¶ 5-8).

allegations span roughly the same period of time, from October 7, 2016 to January or February 2017. (*Compare* DE 1 ¶¶ 9-70, DE 45-1 ¶¶ 9-77.) Within these paragraphs, the more noticeable differences are: **(a)** the insertions of paragraphs relating to Morris-Taylor's December 21, 2016 communication to Vittitow (DE 45-1 ¶¶ 24-25) and Vittitow's handling of Grievance Identifier SRF-16-12-1948-28B (DE 45-1 ¶¶ 36-39); and, **(b)** adjustments to the allegations regarding the December 26, 2016 strip search and cell search (*compare* DE 1 ¶¶ 41-48, DE 45-1 ¶¶ 45-54); the December 27, 2016 transfer to Unit 500's Sanction Wing (*compare* DE 1 ¶¶ 49-54, DE 45-1 ¶¶ 55-60), and the January 17, 2017 strip search and cell search (*compare* DE 1 ¶¶ 55-60, DE 45-1 ¶¶ 61-66).

Moreover, the original and proposed causes of action mirror each other, including: **(a)** the addition of proposed Defendant Vittitow to the retaliation claim (Count I); **(b)** the replacement of "Unknown Supervisors and/or Guards" with "Smith, Biddle, Wendt, Massick, and Close" in the "retaliation, cruel & unusual punishment, & substantive due process violation" claim (Count II); and **(3)** a nearly identical intentional infliction of emotional distress claim (Count III). (*Compare* DE 1 ¶¶ 71-87, DE 45-1 ¶¶ 78-91.) Here, the most noticeable differences occur in the claim related to the alleged strip search and vandalization (Count II), within which the proposed amended complaint removes references to existing Defendant Haynes

but adds proposed Defendants Smith, Biddle, Wendt, Massick, and Close. (*Compare* DE 1 ¶¶ 77-83, DE 45-1 ¶¶ 84-87.)[2]

## F.    Discussion

### 1.    Futility of amendment

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir.1993)). "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose*, 203 F.3d at 421.

#### a.    Exhaustion

Defendants' futility argument is based upon an alleged failure to exhaust administrative remedies as to Massick, Vittitow, Close, Biddle, Wendt and Smith.

---

[2] As will be discussed in further detail below, Plaintiff's proposed causes of action expressly refer to only 16 of the 18 named Defendants.  Proposed Defendants Huizar and Rozier are not expressly mentioned within Counts I, II or III.  (*See* DE 45-1 ¶¶ 78-91.)

(DE 47 at 2, 4-10.)[3]  The exhaustion statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").  As the Supreme Court has explained, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The MDOC's grievance policy specifically states that "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ R, effective July 9, 2007.  Defendants contend that Defendants Massick, Vittitow, Close, Biddle, Wendt and Smith are not named in Step I of any of the eleven SRF grievances that were pursued through Step III and that it is not enough for Plaintiff to name "unknown supervisors, guards, or employees[,]" *i.e.*, use a "catch-all" phrase.  (DE 47 at 8-9.)  Moreover, Defendants contend that Plaintiff did not exhaust any grievance against any of these six Defendants through Step III "prior to filing suit."  (DE 47 at 10.)

### i.    Massick, Close, Biddle, Wendt and Smith

---

[3] Importantly, Defendants do not present an argument that Plaintiff's proposed claims otherwise fail "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

The factual allegations underlying Plaintiff's proposed claims against Smith, Biddle and Wendt concern the December 26, 2016 strip search, and the factual allegations underlying Plaintiff's proposed claims against Massick and Close concern the January 17, 2017 strip search. (DE 45-1 ¶¶ 46-51, 61-66.) Plaintiff acknowledges that these five Defendants "were not specifically named in grievances," but he also explains that he "cannot name people in grievances if he does not know their identities." (DE 49 at 2-3.) In Plaintiff's opinion, these five are not "new" defendants. (DE 49 at 6.)

As to Paragraph R, *i.e.*, the MDOC's grievance policy's specificity requirement, this Court has noted:

> . . . to the extent that MDOC Policy Directive 03.02.130(R) can be read to bar grievances that provide sufficient information to allow easy identification of the individuals being grieved but fail to provide the individuals' names, the Court finds that such a requirement is not "critical" and, therefore, compliance with that requirement is not necessary for exhaustion under the PLRA.

*Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *3 (E.D. Mich. Sept. 23, 2009) ("because Burton's grievance provided sufficient information based upon which the prison could easily identify the individuals being grieved, it served to exhaust Burton's claims against those individuals despite the fact that the individuals' names were not included in the grievance."). *See also St. Ann v. McLean*, No. 5:15-CV-11770, 2016 WL 11472820, at *11-*12 (E.D. Mich. Aug. 15, 2016) ("The MDOC had 'fair notice' of Plaintiff's claims against at least some of the

defendants.") (Patti, M.J.), *report and recommendation adopted sub nom. Ann v. McLean*, No. 15-CV-11770, 2016 WL 5745554 (E.D. Mich. Oct. 4, 2016) (Levy, J.); and, *Hoosier v. Liu*, No. 2:16-10688, 2017 WL 9473188, at *9-*10 (E.D. Mich. Jan. 23, 2017) (concluding that the claims against Xue were exhausted, even though Plaintiff knew or should have known her name, but where "the responses on the merits to the grievance at all three levels indicate[d] that Xue had fair notice that she was among the subjects of the grievance.") (Patti, M.J.), *report and recommendation adopted*, No. 16-10688, 2017 WL 603664 (E.D. Mich. Feb. 15, 2017) (Hood, C.J.), *reconsideration granted sub nom. Hoosier v. Wendy Liu*, No. 16-10688, 2017 WL 2437208 (E.D. Mich. June 6, 2017) (Hood, C.J.), and *report and recommendation adopted sub nom. Hoosier v. Wendy Liu*, No. 16-10688, 2017 WL 2437208 (E.D. Mich. June 6, 2017) (Hood, C.J.).

In Plaintiff's case, at least two of his grievances provided sufficient information for the prison to identify the "unknown" individuals grieved. As this Court has acknowledged, Plaintiff initiated: **(a)** SRF-1954 based on a December 26, 2016 strip search; **(b)** SRF-1962 based on a December 27, 2016 transfer to a sanction/transition wing; and, **(c)** SRF-0097 based on body cavity and jail cell searches which occurred on January 17, 2017. (DE 31 at 5, 12-17; DE 47-3 at 4-6.) Respectively, these grievances were filed against: **(a)** "Prison Guards Karl, Odette, & Unknown Supervisors or Guards[;]" **(b)** "ARUS Haynes, Currently Unknown

Supervisors & Guards[;]" and, **(c)** "Officers Trombly and Glynn; & Unknown MDOC Supervisors, Officers, or Employees." (DE 25 at 84, 94, 91; DE 47-3 at 4-6.) Looking to the texts of the Step I grievances, SRF-1954 described supervisors as those *who ordered* the December 26, 2016 strip and cell search, and SRF-0097 described "supervisors, officers, and/or employees" as those *who ordered* the January 17, 2017 strip and cell searches. (DE 47-3 at 4, 6.) Who ordered the searches (as opposed to who carried them out) is not information a prisoner would necessarily be expected to know when preparing an initial grievance and without the benefit of discovery.

In addition, Wendt, Close and Massick signed one of the related search forms. Specifically, the December 26, 2016 SRF "Non-routine Unclothed Prisoner Search," was signed by Odette, Karl, and *Sgt. Wendt*, and the cited reason was "possible contraband." (DE 38-1 at 9.) Plaintiff takes the position that, because Wendt signed the Step I response in SRF-1954, which Plaintiff had filed against Karl, Odette and "unknown supervisors or guards" based on the December 26, 2016 strip search, Wendt was "on notice of the claims against him . . . ." (DE 49 at 4, DE 25 at 84, DE 47-3 at 4.)[4] Likewise, the January 17, 2017 form was signed by Trombley and *Close*

---

[4] In fact, it seems that discovery revealed two memoranda addressed to Wendt – one from Odette and the other from Karl - regarding the December 26, 2016 strip search. (DE 38 at 100, DE 38-1 at 2.)

and explaining that it was performed "per Inspector *Massick*." (DE 38-1 at 7 (emphasis added).)

In sum, having considered the text of SRF-1954 and SRF-0097, along with the corresponding search forms, these grievances operate to exhaust Plaintiff's claims against *Massick, Close, and Wendt* to the extent the claims are based upon the strip search and cell searches that occurred on December 26, 2016 or January 17, 2017. (DE 45-1 ¶ 85.)[5] However, the same cannot be said for Plaintiff's proposed claims against Biddle and Smith. Despite Plaintiff's assertions that Biddle and Smith were among those who authorized the strip and cell searches (*see* DE 49 at 4-

_____

[5] Plaintiff also argues that exhaustion has occurred, "because prison officials did not enforce their own procedural rules . . ." about naming the individuals involved. (DE 49 at 4.) *See Holloway v. McLaren, et al.*, No. 15-2184, 2016 U.S. App. LEXIS 14644 (6th Cir. Apr. 7, 2016) (Plaintiff "did not identify any prison official in either his Step II or his Step III grievance as the policy directive requires. Despite this failure, MDOC officials addressed the merits of Holloway's grievance at all three steps of the process."); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."). Whether *Holloway* and *Reed-Bey* are important here remains to be seen. Here, Plaintiff's Step II appeal in SRF-1962 specifically mentions Holley, Vittitow and Haynes, as well as "other supervisors and/or guards." (DE 25 at 93.) Plaintiff's Step II and Step III grievance appeals in SRF-1954 and SRF-0097 do not contain specific names. (DE 25 at 82, 90.) Yet, if the Court agrees that Plaintiff's Step I references to "unknown" parties exhaust Plaintiff's claims as to the later identified Defendants, then the Court need not address whether Plaintiff's claims are exhausted because MDOC officials did not enforce the MDOC's procedural rule about naming those involved.

5), their involvement is not clear on either of the "Non-routine Unclothed Prisoner Search" forms. If, as Plaintiff claims, Karl and Odette "revealed during discovery" that Biddle and Smith were among those who authorized the December 26, 2016 strip and cell search (DE 49 at 4), the source of this information – such as a response to a discovery request or a Step I response to a grievance, etc. – is not clear. As such, the Court is not convinced that there was adequate information for prison officials to know that Plaintiff was grieving proposed Defendants Biddle and Smith.

### ii. Vittitow[6]

Plaintiff points to SRF-2018-09-0870-28B as evidence of exhaustion as to his claims against Vittitow. (DE 49 at 5.) SRF-0870 was received at Step I on September 6, 2018 and brought against Russell Vittitow, who is described as an SRF Grievance Coordinator. (DE 49 at 11.) Specifically, this grievance addresses the alleged events of December 21, 2016 and April 1, 2017, *i.e.*, the dates of emails to Vittitow. (*Id.*) Although the copy filed is difficult to read, it appears to state:

> On or about August 22, 2018 I received from Asst. Attorney General Brandon Waddell discovery in the case of *Kitchen v. Winn*, [Case No. 2:17-cv-11627-GCS-APP], and included amongst those documents was an email dated [December 21, 2016] from . . . Morris to Vittitow that I would not have become aware of without use of the discovery

---

[6] To be sure, as acknowledged in the Court's prior report and recommendation, SRF-17-02-0198-28B grieves *nonparties Vittitow and Miller* concerning false misconduct charges based on a February 8, 2017 incident. (*See* DE 25 at 73-75, DE 31 at 7.) However, such an incident does not appear to be the subject of the proposed amended complaint's claims against Vittitow. (*See* DE 45-1 at 74-77.)

process. When reviewing this email, the Law, and MDOC policies, I became aware of a grievable issue against Vittitow. The email asked Vittitow to make note of my name and number for future reference, and advised that I shouldn't be allowed to utilize the grievance process. Acting on that direction, it is believed Vittitow improperly rejected grievances [SRF-1948, SRF-1954, and SRF 1962], which resulted in my prolonged and unjustified confinement on SRF's sanction wings as retaliation for my complaints against Morris. Vittitow rejected the grievances as vague, but District Judge George Caram Steeh and Magistrate Judge Anthony P. Patti both found that those reasons were improper and violated MDOC policy ([DE 31 at 11-15]). The discovery also revealed an email dated [April 1, 2017] from Shannon Flaugher to Vittitow keeping me under surveillance and reporting to him about my grievance activities. It is believe[d] that Vittitow improperly rejected the grievances in order to aid Morris [in] retaliate[ing] against me and to help her keep me confined on SRF's sanction Wings. I'm seeking disciplinary action[.]

(*Id.*)[7] On October 17, 2018, Warden O. T. Winn upheld the rejection at Step II. (DE 49 at 12.) Then, on November 15, 2018, the rejection was upheld at Step III. (DE 49 at 13.)

It is true that "[t]he plain language of [42 U.S.C. § 1997e(a)] makes exhaustion a *precondition* to filing an action in federal court[.]" *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (emphasis added). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the

---

[7] Shannon M. Flaugher's April 1, 2017 email to Russell A. Vittitow concerns Plaintiff and another prisoner. (*See* DE 38-1 at 11.)

plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017).

SRF-0870 having been received at Step III on November 7, 2018 and having a Step III response dated November 15, 2018, Plaintiff's January 25, 2019 motion to amend is not premature as to any proposed claims against Vittitow *that are the subject of SRF-0870*. The proposed amended complaint expressly mentions Vittitow with respect to: **(a)** the events of December 21, 2016, which is the date Plaintiff allegedly filed with Vittitow an informal complaint against Morris (DE 45-1 ¶¶ 19, 23-25); **(b)** the events of December 26, 2016, which is the date Plaintiff allegedly sent a kite to Vittitow about transfers to and from the sanction wing (DE 45-1 ¶¶ 41-42); and, **(c)** the events of December 27, 2016, which is the date of Vittitow's Step I grievance response in SRF-1948, as well as the date of Plaintiff's alleged transfer to Unit 500's sanction wing (DE 45-1 ¶¶ 36, 38-39, 55-59). Plaintiff's proposed retaliatory transfer claim (Count I) adds Vittitow as a Defendant. (DE 45-1 ¶¶ 79, 81.)

Perhaps because it was attached to Plaintiff's February 25, 2019 reply, Defendants' February 8, 2019 response does not address SRF-0870, although I note that Plaintiff originally attached copies of SRF-0870 and its appeals to his November 6, 2018 second motion to compel discovery. (DE 38-1 at 3-5, DE 49 at 10-13.) In any event, as failure to exhaust is an affirmative defense, it is more appropriate for

the Court to permit the amendment but allow Defendants to challenge whether SRF-0870 (or, for that matter, any other grievance) exhausts Plaintiff's proposed claims against Defendant Vittitow. Nonetheless, the Court warns Plaintiff that, to the extent his claims against Vittitow are based on Vittitow's handling of SRF-16-12-1948-28B, Defendant Vittitow cannot be liable under 42 U.S.C. § 1983 where his "only role[] . . . involve[s] the denial of administrative grievances or the failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

At this point, for the reasons stated above, the Court is not convinced that the claims against newly named Defendants Massick, Vittitow, Close, and Wendt are futile for failure to exhaust administrative remedies. However, the Court is not convinced that there was adequate information for prison officials to know that Plaintiff was grieving proposed Defendants Biddle and Smith.

### 2. Bad faith or dilatory motive

Defendants also argue that Plaintiff made a false statement within his motion. (DE 47 at 10.) Specifically, Plaintiff stated that, "[a]s a result of conducting discovery," he was able "to identify *some* of the other guards who were involved in this incident," and he "wishes to now add them as defendants." (DE 45 at 2-3 (emphasis added).) Defendant contends that Plaintiff was aware of Vittitow, Huizar and Rozier's identities when Plaintiff filed his lawsuit on May 19, 2017. (DE 47 at 11-13.) Plaintiff explains that the "some" guards to whom he was referring are

Massick, Close, Biddle, Wendt, and Smith. (DE 49 at 6.) The Court accepts this explanation and, for the reasons that follow, concludes that Plaintiff has not proceeded in bad faith or with dilatory motive in waiting to name Vittitow, Huizar and Rozier as Defendants.

### a. Vittitow

Although proposed Defendant Vittitow is not a party to the original complaint, he was certainly mentioned within its allegations concerning Plaintiff's December 21, 2016 informal complaint against Defendant Morris and Plaintiff's December 26, 2016 kite about transfers to and from Unit 600's Sanction Wing. (*See* DE 1 ¶¶ 21, 25, 37, 38.) Similarly, the facts underlying Plaintiff's proposed claims against Vittitow begin on December 21, 2016, when Plaintiff submitted an informal complaint against Morris-Taylor (DE 45-1 ¶¶ 19, 23, 24, 25), include the December 26, 2016 kite about transfers to and from Unit 600's sanction wing (DE 45-1 ¶¶ 41, 42), and continue with Vittitow's December 27, 2016 receipt and handling of SRF-16-12-1948-28B, which, as noted above, concerned Plaintiff's December 22, 2016 transfer to a sanction/transition wing (DE 45-1 ¶¶ 36, 38, 39). Accordingly, Plaintiff's proposed retaliatory transfer claim (Count I) adds Vittitow as a Defendant. (DE 45-1 ¶¶ 79, 81.)

Defendants contend that Vittitow's "identity was not a new-found discovery that was uncovered due to the discovery process." (DE 47 at 11.) While Plaintiff

admits that he knew who Vittitow was, Plaintiff claims he "did not know about the December 21st email sent to him by Defendant Morris until it was revealed during discovery." (DE 49 at 6.) Plaintiff's explanation is consistent with the previously mentioned insertions of paragraphs relating to Morris-Taylor's December 21, 2016 communication to Vittitow (DE 45-1 ¶¶ 24-25) and Vittitow's handling of Grievance Identifier SRF-16-12-1948-28B, which, as noted above, concerned Plaintiff's December 22, 2016 transfer to the sanction/transition wing (DE 45-1 ¶¶ 36-39). Given the directive that leave to amend should be "freely given," Fed. R. Civ. P. 15(b), *Foman*, 371 U.S. at 182, along with Plaintiff's reasonable explanation for not having named Vittitow from the outset of this lawsuit, the Court will permit Plaintiff to amend his complaint to add his proposed claims against Vittitow.

### b.    Huizar and Rozier

Certainly, Plaintiff knew of Huizar and Rozier's identities at the time he filed his original complaint. As noted in my April 20, 2018 report and recommendation, Plaintiff's original complaint contained general allegations regarding: **(a)** an alleged January 23, 2017 search conducted by *non-party Officer Huizar*, regarding which Plaintiff initiated SRF-17-01-0124-17G; and, **(b)** an alleged February 1, 2017 vandalization of Plaintiff's personal property by *non-parties – Officers Barney and Rozier*, regarding which Plaintiff initiated SRF-17-02-0165-17g. (*See* DE 31 at 5 n.2; DE 1 ¶¶ 61-70; DE 25 at 68-72, 76-80.) Moreover, I noted that, to the extent

these allegations related to "unknown supervisors and guards," such defendants were not properly before this Court. (DE 31 at 5 n.2.)

Plaintiff now seeks to add Huizar and Rozier as Defendants in this case, including paragraphs similar to those referenced above. (*Compare* DE 1 ¶¶ 7, 61-69 *with* DE 45-1 ¶¶ 7, 67-77.) Pointing to the original complaint and the April 2018 report and recommendation's discussion of irrelevant grievances, including SRF-0165 and SRF-0124, Defendants contend that Plaintiff was aware of Markus Huizar and Jermer Rozier's identities at the time he filed this lawsuit. (DE 47 at 12-13; DE 31 at 5-7.) Yet, Plaintiff explains that they were not listed as Defendants in the original complaint, because "the grievances against them had not been fully exhausted at that time[,]" and further explains that he waited to add these Defendants until after he discovered the identities of the others, "so as to make the amendments all at the same time." (DE 49 at 6-7.)

SRF-0124's Step III response is dated May 16, 2017, and SRF-0165's Step III response is dated May 10, 2017. (DE 47-2 at 3-4.) Thus, although these grievances were technically exhausted at the time Plaintiff's lawsuit was filed on May 19, 2017, Plaintiff swore to the complaint on May 8, 2017, at which point Plaintiff was awaiting the Step III responses in SRF-0124 and SRF-0165. (DE 1 at 18.) Plaintiff having offered plausible and good faith explanations for the delay in

naming these Defendants as parties, the Court will grant Plaintiff's request to amend to the extent it seeks to add Huizar and Rozier as Defendants.[8]

For the foregoing reasons, the Court is not convinced that Plaintiff exercised bad faith or dilatory motive in waiting to name Defendants Vittitow, Huizar and Rozier as Defendants.

### 3.    Undue delay and undue prejudice

Finally, Defendants contend that amending the complaint and adding eight Defendants will result in prejudice.  (DE 47 at 13-15.)  In addition to Plaintiff's discovery requests served in August 2017 and September 2018, which are attached to Plaintiff's November 6, 2018 second motion to compel discovery (DE 38), Defendants contend they "are currently still responding to recently received discovery requests[,]" namely a third set of interrogatories to Defendant Odette, a second set of admissions, and a third request for the production of documents or electronically stored information.  (DE 47 at 15, DE 47-5.)  These appear to have been served in January 2019.  (DE 47-5.)

Plaintiff argues that Defendants will not be prejudiced by the proposed amendment.  (DE 49 at 7-8.)  In part, Plaintiff alleges that "the delay in discover[ing]

---

[8] The allegations involving Huizar and Rozier concern what seem to be two separate January 2017 cell searches.  (*See* DE 45-1 ¶¶ 67-77.)  For whatever reason, these Defendants are not expressly named within the paragraphs describing Counts I, II or III.  (*See* DE 45-1 ¶¶ 78-91.)  Thus, the particular proposed causes of action against them are unclear.

the identities of the proposed Defendants only occurred as a result of the Defendants' unnecessary delays in responding to Kitchen's discovery." (*Id*.) There is some merit to Plaintiff's argument. The Court's April 20, 2018 order provided for an automatic lift of the stay of discovery once the Court ruled upon the then pending dispositive motion, and the Court did so on May 22, 2018. (DEs 32 at 2, DE 33.) In July, there was a substitution of defense counsel, and Plaintiff filed a motion to compel. (DEs 34, 35.) This appears to have jump-started an exchange of discovery, which occurred during August, September and October 2018. (*See* DE 38 at 19-37, 42-98.) Meanwhile, in September 2018, the Court entered two orders, one granting Plaintiff's motion to compel as unopposed and the other setting discovery and dispositive motion deadlines. (DEs 36-37.)

Upon consideration, even though Plaintiff could have named *some* of the Defendants at an earlier time (such as Huizar, Rozier, and/or Vittitow), and even though the November 6, 2018 discovery deadline has been extended on two occasions (once to January 7, 2019 and then to February 4, 2019), the dispositive motion deadline has been extended to June 5, 2019. Thus, the parties are no longer "less than a month . . . from the dispositive motion deadline." (DE 47 at 15.) Together with the above-described nearly three-month total extension of the discovery deadline, the Court is not convinced that Defendants will be unduly

prejudiced by the proposed amendment, either by undue delay or expenditure of funds. (*See* DE 37; Dec. 4, 2018 Text-Only Order; DE 44 at 17; DE 47 at 14-15.)

## II.    ORDER

Accordingly, Plaintiff's January 25, 2019 motion for leave to amend complaint and to appoint U.S. Marshals to serve new defendants (DE 45) is **GRANTED** as to proposed Defendants Massick, Huizar, Rozier, Vittitow, Close and Wendt, but the motion is **DENIED** as to proposed Defendants Biddle and Smith.

Plaintiff **SHALL** file his amended complaint no later than **Thursday, April 25, 2019**, although before doing so he should ensure that the amended complaint: **(a)** complies with Fed. R. Civ. P. 10(a); **(b)** lists Defendant Karl within the paragraphs identifying the parties; and, **(c)** makes clear which causes of action are brought against Defendants Huizar and Rozier. Moreover, Plaintiff is reminded that a defendant cannot be liable under 42 U.S.C. § 1983 where his "only role[] . . . involve[s] the denial of administrative grievances or the failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Once Plaintiff has timely filed his amended complaint in compliance with the above directions, the U.S. Marshal Service is DIRECTED to serve copies of the complaint upon Defendants Massick, Huizar, Rozier, Vittitow, Close and Wendt at the MDOC's Saginaw Correctional Facility. Finally, in order to accommodate the new Defendants and minimize the existing Defendants' concerns about the "last-minute amendment" and pushing "the

life of this case into 2020 . . .[,]" (DE 47 at 15), there will be a brief extension of the now-passed February 4, 2019 discovery deadline to **Tuesday, June 25, 2019**, but only for discovery concerning the six newly named Defendants.  For all parties, the dispositive motion deadline is extended from June 5, 2019 to **Thursday, July 25, 2019**.

Dated: April 8, 2019                    s/*Anthony P. Patti*
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on April 8, 2019, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti